UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY L. TUTORA,

                            Plaintiff,

        v.

ARAMARK CORRECTIONAL SERVICES
*and* WILLIAM VAUGHN,

                            Defendants.

No. 17-CV-9170 (KMK)

OPINION & ORDER

Jeremy L. Tutora
Syracuse, NY
*Pro Se Plaintiff*

Robert Paessler, Esq.
McMahon, Martine & Gallagher, LLP
Brooklyn, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Jeremy L. Tutora ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983,

against Aramark Correctional Services ("Aramark") and William Vaughn ("Vaughn"; together

with Aramark, "Defendants"), alleging that while Plaintiff was incarcerated at the Orange

County Jail, Defendants violated his rights under the Eighth and Fourteenth Amendments by

failing to provide him with adequate food, which caused Plaintiff to lose significant weight and

interfered with his medications, aggravating certain of Plaintiff's pre-existing medical

conditions.  (*See generally* Compl. (Dkt. No. 2).)  Before the Court is Defendants' Motion for

Summary Judgment (the "Motion").  (*See* Not. of Mot. (Dkt. No. 60).)  For the foregoing

reasons, Defendants' Motion is granted.

I.  Background

A.  Factual Background

The following facts are taken from Defendants' Statement pursuant to Local Civil Rule 56.1, (*see* Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 62)), and the admissible evidence submitted by Defendants.[1]  These facts are recounted "in the light most favorable to" Plaintiff, the non-movant.  *See Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021).  The facts below are in dispute only to the extent indicated.[2]

---

[1] As explained *infra*, Plaintiff did not respond to Defendants' Motion, and therefore, has not submitted any evidence to the Court.

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The non-moving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  "Pro se litigants are not excused from meeting the requirements of Local Rule 56.1," *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021) (italics, alteration, and citation omitted), and "[a] non[-]moving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same).  Here, Defendants filed and served their Statement pursuant to Rule 56.1, (*see* Dkt. No. 62), and filed and served a Statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (*see* Dkt. No. 63).  Despite this notice, Plaintiff failed to submit a response either to Defendants' 56.1 Statement, in particular, or Defendants' Motion, in general.  Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible.  *See Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal,* No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record," including Plaintiff's deposition testimony, when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted); *see also Day v. MTA N.Y.C. Transit Auth.*, No. 17-CV-7270, 2021 WL 4481155, at *9 (S.D.N.Y. Sept. 30, 2021) ("[W]here a

Plaintiff entered the custody of the Orange County Jail ("OCJ") on July 31, 2017, after he was convicted for marijuana possession and sentenced to six months of incarceration. (*See* Defs.' 56.1 ¶ 10; *see also* Not. of Mot. Ex. B ("Pl. Dep."), at 20:14–21:19 (Dkt. No. 60-2).) As relevant to the instant Motion, upon entering OCJ, Plaintiff weighed 170 pounds and was taking Topamax, Vitamin B, and Magnesium to treat migraines, nausea, and vomiting caused by Plaintiff's injuries sustained in a car accident the year before his conviction. (*See* Defs.' 56.1 ¶¶ 7, 8, 11.)

On May 26, 2016, Plaintiff was making a right-hand turn into a gas station when he was hit from behind by a truck. (*See* Pl. Dep. 22:20–23:4; *see also* Defs.' 56.1 ¶ 4.) As a result of the accident, Plaintiff suffered injuries that caused him to experience persistent neck and back pain, for which he received treatment for many months to follow. (*See* Pl. Dep. 26:6–32:20.) As relevant to the instant Motion, Plaintiff's weight fluctuated after his accident, as evidenced by the numerous instances his weight was recorded in conjunction with his medical visits to treat his neck and back pain. First, on May 29, 2016—three days after the accident, when Plaintiff went to the emergency room at Lourdes Hospital—Plaintiff's weight was recorded at 176 pounds.

---

pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and citation omitted)); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 502 n.1 (S.D.N.Y. 2015) (considering "the statements and documents in [the] [p]laintiff's opposition papers to determine if there are any material issues of fact based on the evidence in the record," but disregarding factual assertions that "do not contain citations to the record, or are not supported by the citations in the record"); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).

(*See* Defs.' 56.1 ¶¶ 5–6.)  Next, on June 1, 2016, Plaintiff's weight was recorded at 178 pounds.

(*See* Pl. Dep. 28:2–7.)  On July 20, 2016, Plaintiff's provider recorded his weight at 160 pounds

and noted that he was having an "active problem" with weight loss, which Plaintiff seems to

suggest was due to his pain medications causing him to suffer from nausea and a lack of appetite.

(*See id.* at 28:19–29:10.)  Plaintiff underwent an independent medical examination in connection

with a civil lawsuit Plaintiff brought regarding the car accident on September 16, 2016, and his

weight was recorded by the examining physician as 160 pounds.  (*See* Defs.' 56.1 ¶ 9.)

Plaintiff's weight was again recorded as 160 pounds on October 24, 2016 by one of his medical

providers.  (*See* Pl. Dep. 29:11–14.)  On November 29, 2016, Plaintiff's weight was recorded at

170 pounds, though Plaintiff's provider still noted that Plaintiff was experiencing a problem with

weight loss.  (*See id.* at 29:17–20.)  On December 23, 2016, Plaintiff's weight was recorded at

167 pounds.  (*See id.* at 29:22–24.)[3]

---

[3] At certain points in his deposition, Plaintiff disputed certain of these weights and
disputed generally that he lost weight or that his weight fluctuated after and as a result of the car
accident.  (*See* Pl. Dep. 30:19–31:3 ("Q. I have Dr. Talanti's records.  For most of your records
he puts down your weight, and he had you from June 2nd, 2016, after the accident, through
March of 2017, he had your weight fluctuating from like 170 to 164.  Does that sound right?
A. No, sir.  Q. What would you think it would be?  A. I'm usually around 185."); 28:14–18
("Q. After the accident, did you have some issues with weight loss and weight fluctuation?
A. Not really.  As long as I took certain meds that they gave me, like the pain meds and stuff, I
was able to eat.").)  However, Plaintiff's testimony on this point was neither consistent, (*see,
e.g.*, *id.* at 36:3–4 (explaining that the food at OCJ "just made it worse, because I had the
accident, so I was light already")), nor supported by anything but Plaintiff's speculation, (*see,
e.g.*, *id.* at 29:17–21 ("Q. And then I have another entry, November 29, 2016, still has your active
problem as weight loss, but you're now 170 pounds.  Any recollection of that?  A. No.  That
don't make sense, but no.")).  Accordingly, the Court will not consider Plaintiff's testimony as
creating a genuine dispute on this point.  *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d
Cir. 2005) ("In the circumstances presented in the instant case—where . . . the [d]istrict [c]ourt
found nothing in the record to support [the] plaintiff's allegations other than plaintiff's own
contradictory and incomplete testimony . . . we hold that the [d]istrict [c]ourt did not err in
awarding summary judgment."); *Stroud v. New York City*, 374 F. Supp. 2d 341, 349 (S.D.N.Y.
2005) ("[On summary judgment,] the non[-]moving party 'may not rely on mere conclusory
allegations or speculation, but instead must offer some hard evidence' in support of its factual

As stated, when Plaintiff was screened upon entering OCJ on July 31, 2017, his weight was recorded at 170 pounds.  (*See* Defs.' 56.1 ¶ 11.)  At the time of his release six months later, in January 2018, Plaintiff's weight was recorded at 158 pounds.  (*See id.* ¶¶ 14, 29.)  Plaintiff attributes this 12-pound weight loss to the food served to inmates at OCJ by Defendants, which Plaintiff characterizes as "not fit for human consumption."[4]  (Pl. Dep. 69:22–24.)  Plaintiff lodges numerous complaints, including that: (1) the meals served to inmates did not provide inmates with sufficient daily caloric intake, (*see, e.g.*, Pl. Dep. 36:6–8); (2) the meals served to inmates did not provide inmates with sufficient daily vitamins and nutrition, (*see, e.g.*, *id.* at 38:9–13); (3) the food served to Plaintiff had a chemical smell, which caused Plaintiff to vomit immediately after each meal, (*see, e.g.*, *id.* at 45:12–21, 71:9–19); (4) the meals served to inmates contained soy, which can cause cancer, (*see id.* at 50:8–24); and (5) the food, in general, was spoiled, outdated, not fresh, and unsanitary, (*see id.* at 58:19–25, 67:4–15; *see also* Defs.' 56.1 ¶¶ 2, 12, 22, 25).  Plaintiff also claims that because he was not able to eat (or digest) the food provided by Defendants, he was not able to take his medications—which must be taken with food—and thus, his pre-existing migraines, nausea, and vomiting worsened.  (*See* Pl. Dep. 41:17–44:10; *see also* Defs.' 56.1 ¶ 3.)  Plaintiff eventually stopped eating the meals provided by Defendants, and instead purchased food items from OCJ's commissary.  (*See* Defs.' 56.1 ¶ 19.) In response to Plaintiff's refusal of his meals, Aramark began to provide Plaintiff with an Ensure

---

assertions." (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004))); *cf. Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572–73 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." (citing cases)).

[4] At the time of Plaintiff's incarceration at OCJ, Aramark provided food services to inmates pursuant to a contract with Orange County.  (*See* Not. of Mot. Ex. F ("Johnson Aff."), ¶ 5 (Dkt. No. 60-6).)  Vaughn is an employee of Aramark who worked at OCJ.  (*See* Answer I.B (Dkt. No. 19).)

drink and a Boost drink each day to supplement his diet, but Plaintiff eventually stopped drinking them, claiming they did not help. (*See id.* ¶ 21.)

However, Plaintiff has proffered no evidence to support these claims apart from his testimony and Plaintiff admitted at his deposition that he has no firsthand knowledge of most of these claims. First, Plaintiff stated at his deposition that he believed the meals provided to inmates at OCJ did not provide inmates with sufficient caloric intake and contained soy because he overheard unidentified inmates and corrections officer discussing it in the mess hall, because his girlfriend did online research that evidently revealed that Aramark had failed to provide calorically sufficient and soy-free meals at other facilities, and because Plaintiff did unidentified online research about other claims against Aramark regarding OCJ. (*See* Pl. Dep. 50:25–54:8.) However, Plaintiff admitted that he never, for instance, had the food examined, nor was he aware of what the calorie count was for each meal. (*See id.* at 54:9–12, 62:17–24.) Plaintiff also admitted that no doctor or health care provider ever told him that the food provided to Plaintiff at OCJ was nutritionally inadequate, (*see id.* at 62:13–16), and that he did not know how much protein, calcium, or iron was in the food, (*see id.* at 63:8–10, 17–20), or if there were vitamins in the food, (*see id.* at 63:14–16). Finally, Plaintiff conceded that while he had heard "people" in the mess hall saying that the food was prepared in unsanitary conditions, he never actually witnessed food preparation. (*See id.* at 67:4–68:7.)

On the other hand, Defendants offer the affidavit of Wendy Johnson ("Johnson"), a registered dietitian and the Director of Nutrition & Operational Support Services for Aramark, who supported Aramark's services at OCJ from 2014 to 2019. (*See* Johnson Aff. ¶¶ 3, 4, 7.) Johnson attested, inter alia, that "[a]ll menus served at the Orange County Jail, including the regular diet that Plaintiff was served, included adequate levels of protein, vitamin A, vitamin C[,]

and calcium"; that "[t]he regular diet did not use soy as the protein source in casseroles and mixed dishes" and thus that "the amount of soy in the regular diet would be minimal"; and that "[t]he meals served to detainees/inmates at the Orange County Jail averaged approximately 3,100 calories per day depending on the meals selected," which "exceeded the daily recommended intake for males and females aged 19-50." (*See* Johnson Aff. ¶¶ 12, 14.)

After his release from OCJ, Plaintiff gained back the weight he lost while at OCJ within three to four months. (*See* Pl. Dep. 88:17–89:5.) Plaintiff never saw a dietician after his release from OCJ. (*See* Defs.' 56.1 ¶ 31.)

B. Procedural History

Plaintiff's Complaint was docketed on November 21, 2017. (*See* Compl.) On March 22, 2018, Defendants filed their Answer. (*See* Answer.) The Court scheduled an initial pre-trial conference for September 19, 2019, but when Plaintiff did not appear, the conference was rescheduled for October 25, 2019. (*See* Dkt. (minute entry for Sept. 19, 2019).) However, Plaintiff also did not appear at the conference on October 25, 2019, despite the fact that the Court had granted Plaintiff permission to appear telephonically in advance. (*See* Dkt. (minute entry for Oct. 25, 2019); *see also* Dkt. No. 28.) Nonetheless, the Court adopted a case management order. (*See* Case Mgmt. Plan & Scheduling Order (Dkt. No. 29).)

On January 23, 2020, a letter from Plaintiff was docketed which sought the Court's recusal based on the Court's scheduling of conferences at times that were inconvenient for Plaintiff and the Court's dismissal of another action filed by Plaintiff based on Plaintiff's ten-month failure to prosecute. (*See* Dkt. No. 30.) The Court denied Plaintiff's request for recusal as meritless on January 29, 2020. (*See* Dkt. No. 31.)

After a lengthy discovery period, the Court held a status conference on October 14, 2021 at which Defendants informed the Court of their intent to file a summary judgment motion and

the Court adopted a briefing schedule.  (*See* Dkt. (minute entry for Oct. 14, 2021); Dkt. No. 59.)

Defendants filed the instant Motion and ancillary papers on December 15, 2021.  (*See* Not. of

Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 61).)  Defendants initially

failed to file a Rule 56.1 Statement or a Rule 56.2 Notice; these documents were filed on

February 7, 2022 and, in light of the delay, the Court granted Plaintiff an extension of time to

respond to Defendants' Motion.  (*See* Defs.' 56.1; Defs.' 56.2 Not.; Dkt. No. 64.)

Rather than file a response to Defendants' Motion, however, Plaintiff again sought this

Court's recusal on March 15, 2022, citing certain of Magistrate Judge Judith McCarthy's rulings

on discovery disputes, this Court's scheduling of status conferences at inconvenient times, and

this Court's use of memo endorsements.  (*See* Dkt. No. 65.)  The Court denied Plaintiff's second

request for recusal as meritless on March 23, 2022.  (*See* Dkt. No. 66.)

To date, Plaintiff has not filed a response to Defendants' Motion.  (*See* Dkt.)  The Court

therefore deems the Motion fully submitted.

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the

record evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor."  *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232,

240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute

exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also*

*Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading.").  And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting FED. R. CIV. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

   B.  Analysis

Plaintiff claims that Defendants' alleged failure to provide him with adequate food during his incarceration at OCJ violated Plaintiff's Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment, and seeks $1 million in damages.  (*See* Compl. V.) Defendants argue that because Aramark contracted with Orange County to provide services at OCJ and because Plaintiff brings his claim pursuant to § 1983, Plaintiff's claim is governed by

*Monell v. Department of Social Services*, 436 U.S. 658 (1978), and Plaintiff has failed to demonstrate that Plaintiff's injuries were caused by a policy or custom.  (*See* Defs.' Mem. 6–9.)  In the alternative, Defendants argue that Plaintiff's claims fail on the merits, because there is no genuine dispute that Plaintiff has failed to demonstrate that he suffered an objectively serious deprivation or that Defendants were deliberately indifferent to Plaintiff's health.  (*See id.* at 9–16.)  The Court addresses these arguments to the extent necessary to decide the instant Motion.

### 1.  Plaintiff's *Monell* Claim Against Aramark

As a general rule, private entities are not liable under § 1983, but "conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with governmental character as to become subject to the constitutional limitations [p]laced upon state action."  *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)).  The Supreme Court has "found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974), and one such power traditionally reserved to the State is running and providing services to a jail, *see, e.g.*, *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013) ("In providing medical care in prisons, [a private medical contractor] performs a role traditionally within the exclusive prerogative of the state and therefore, in this context, is the functional equivalent of the municipality."); *Mercado v. City of New York*, No. 08-CV-2855, 2011 WL 6057839, at *7 n.10 (S.D.N.Y. Dec. 5, 2011) ("Corporate entities like [private medical providers] are treated the same as a municipality when performing the public function of running a jail.").

In *Monell*, the Supreme Court held that municipalities may be sued under § 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the

municipality's] officers." 436 U.S. at 690. Accordingly, to succeed on a *Monell* claim, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries," and second, "must establish a causal connection—an 'affirmative link'—between the policy and deprivation of his constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985)). Furthermore, "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"Although the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw . . . has extended the *Monell* doctrine to private § 1983 defendants" acting under color of state law. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (footnote omitted); *see also Rojas v.*

12

*Alexander's Dep't Store*, 924 F.2d 406, 408–09 (2d Cir. 1990) (citing cases); *Swinton v. Corr. Med. Care, Inc.*, No. 15-CV-53, 2020 WL 9607024, at *10 (W.D.N.Y. Dec. 22, 2020) ("[T]he *Monell* requirements for liability also apply to municipal contractors like [the defendant], which, as the medical provider at [Monroe County Jail], 'performs a function traditionally within the exclusive prerogative of the state.'" (quoting *McNeil v. Corr. Med. Care*, No. 18-CV-894, 2019 WL 4415528, at *9 (N.D.N.Y. Sept. 16, 2019))); *Cruz v. Corizon Health Inc.*, No. 13-CV-2563, 2016 WL 4535040, at *8 n.11 (S.D.N.Y. Aug. 29, 2016) (concluding that "[t]he analysis under *Monell* . . . applies equally to Corizon," a private entity that "provides medical care in prisons and thus performs a role traditionally within the exclusive prerogative of the state" (quotation marks omitted)).  Nonetheless, as is true for municipal defendants, "[p]rivate employers are not [vicariously] liable under § 1983 for the constitutional torts of their employees."  *Rojas*, 924 F.2d at 408 (collecting cases); *accord Whalen v. Allers*, 302 F. Supp. 2d 194, 202–03 (S.D.N.Y. 2003) (finding a private employer cannot be held vicariously liable under § 1983 because "there is no tenable reason[] to distinguish a private employer from a municipality" (quotation marks omitted)).  Rather, to recover under § 1983 against a private entity, a plaintiff must demonstrate that an action pursuant to some official policy caused the deprivation.  *See Rojas*, 924 F.2d at 409 ("[T]o recover under § 1983, it is not enough for [the plaintiff] to show that his arrest . . . was without probable cause."); *Jouthe v. City of New York*, No. 05-CV-1374, 2009 WL 701110, at *18 (E.D.N.Y. Mar. 10, 2009) ("It is well-established that private employers are not liable under [§] 1983 for the constitutional torts of their employees, unless the plaintiff proves that action pursuant to official *policy* of some nature caused a constitutional tort." (alteration and quotation marks omitted)); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 375 (S.D.N.Y. 2005) ("[A] private corporation could be held liable under [§] 1983 for its own unconstitutional

policies.  Therefore, a plaintiff must prove that action pursuant to official policy of some nature caused a constitutional tort." (alteration, citation, and quotation marks omitted)); *see also Bess*, 2013 WL 1164919, at *2 ("Despite the fact that it is a private entity, [a medical contractor] enjoys the benefit of the *Monell* requirements.").

Here, there is no dispute that by running food services at OCJ, Aramark stepped into the shoes of Orange County, and thus may be held liable under § 1983 for any constitutional deprivations caused via the exercise of this traditional state power so long as the deprivation was pursuant to an official policy.  (*See, e.g.*, Defs.' Mem. 6–8.)  However, here, the record is devoid of *any* evidence that supports the existence of a policy or custom sufficient to substantiate a *Monell* claim.  Even if the Court were to construe Plaintiff's claims liberally and infer that Plaintiff's theory is that Aramark had a policy of providing nutritionally and calorically deficient and unsanitary food to inmates at OCJ, Plaintiff has failed to offer sufficient evidence to support this theory.  The only evidence that Plaintiff has arguably provided is his own deposition testimony, which cannot be used to establish that Aramark had any such policy because Plaintiff admitted that he lacked personal knowledge as to, inter alia, (1) the calorie count for each meal, (2) how much protein, calcium, or iron was in the food, (3) whether there were vitamins in the food, or (4) whether the food was prepared in unsanitary conditions.  *See supra* I.A.  *See also DiStiso*, 691 F.3d at 230 ("[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge.'" (quoting FED. R. CIV. P. 56(c)(4))).  Indeed, the only proper evidence in the record is that of Defendants, which—if anything—demonstrates the opposite: that Aramark had a policy of providing a nutritionally and calorically adequate diet to inmates at OCJ.  *See supra* I.A.

14

Accordingly, the Court finds that there is no genuine dispute of material fact such that Aramark is entitled to summary judgment on Plaintiff's *Monell* claim.

### 2.  Plaintiff's § 1983 Claims Against Vaughn

In their Motion, Defendants inappropriately conflate Plaintiff's claims against Aramark and Plaintiff's claims against Vaughn—or simply ignore Plaintiff's claims against Vaughn.  (*See generally* Defs.' Mem.)  However, the Court finds that there is no genuine dispute that Vaughn is equally entitled to summary judgment because even assuming arguendo that there is a genuine dispute of material fact as to whether Plaintiff suffered a constitutional deprivation, there is no dispute as to Vaughn's lack of personal involvement.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (emphases and quotation marks omitted).  "The fact that a defendant is a supervisor is not enough to impute personal involvement onto that person; liability requires, rather, that the 'defendant, through the official's own individual actions, has violated the Constitution.'"  *Siler v. Munroe*, No. 20-CV-5794, 2021 WL 6064701, at *7 (S.D.N.Y. Dec. 22, 2021) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)).

15

Here, there is no evidence that Vaughn was personally involved in the constitutional deprivations that Plaintiff alleges.  *See supra* I.A.  Indeed, there is virtually no evidence concerning Vaughn in the record whatsoever.  For instance, Vaughn is referenced three times during Plaintiff's deposition, and only to the extent that Plaintiff vaguely identifies Vaughn as the individual who "controlled" food service at OCJ, (*see* Pl. Dep. 36:18–19, 82:3–7), and as an individual to whom Plaintiff wrote a letter complaining about the food at some point during Plaintiff's incarceration, (*see id.* at 81:17–22).  None of this testimony is sufficient to create a genuine dispute of material fact as to Vaughn's involvement in Plaintiff's alleged constitutional deprivations.  As such, Vaughn is entitled to summary judgment on any claims Plaintiff has brought against him in his individual capacity.  *See, e.g.*, *Ridge v. Davis*, No. 18-CV-8958, 2022 WL 357020, at *10 (S.D.N.Y. Feb. 7, 2022) (granting summary judgment to certain defendants in a § 1983 suit bringing excessive force claims where "the record fails to establish that [these defendants] were directly involved in the alleged assault on [the] plaintiff"); *Allah v. Annucci*, No. 16-CV-1841, 2020 WL 3073184, at *8 (S.D.N.Y. June 10, 2020) (granting summary judgment to a § 1983 defendant where the record did not establish the defendant's personal involvement).

### 3.  Merits of Plaintiff's Unconstitutional Conditions of Confinement Claims

The Court's holdings above serve to dispose of the Action entirely, but even assuming arguendo that Plaintiff could demonstrate that there was a genuine dispute of material fact as to the existence of an Aramark policy that caused Plaintiff's alleged constitutional deprivation or to Vaughn's personal involvement in that deprivation, the Court would still find that Defendants are entitled to summary judgment on the merits of Plaintiff's claims.

a.  Legal Standard

In his Complaint, Plaintiff appears to attempt to bring claims alleging that he was subjected to cruel and unusual punishment separately under the Eighth Amendment and the Fourteenth Amendment.  (*See, e.g.*, Compl. II.D ("Aramark is violating my 8th Amendment as well as 14th Amendment [rights] for the cruel & unusual punishment of their practices and for the liability of [their] operation within this jail.").)  The difference between claims of unconstitutional conditions of confinement under the Eighth Amendment versus the Fourteenth Amendment is the status of the claimant.  Whereas the Eighth Amendment governs claims brought by convicted inmates, the Fourteenth Amendment governs claims brought by pretrial detainees.  *See, e.g.*, *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment, . . . because pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."); *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (applying Eighth Amendment to claim brought by convicted inmate).  It is unclear whether Plaintiff entered the custody of OCJ upon his arrest or upon his conviction, (*see* Defs.' 56.1 ¶ 10 ("On July 31, 2017, Plaintiff entered [OCJ] on conviction of possession of marijuana and was sentenced to six[] months['] incarceration."); Pl. Dep. 32:19–20 ("I was arrested in July '17.")), but if Plaintiff was in the custody of OCJ for a period of time before his conviction, his claims which result from his pre-conviction incarceration would be governed by the Fourteenth Amendment and his claims which result from his post-conviction incarceration would be governed by the Eighth Amendment.  However, the Court need not determine whether this is, in fact, the case, because "[a] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" and

17

Plaintiff's claims fail under either standard.  *Darnell*, 849 F.3d at 29 (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

      To establish an unconstitutional conditions of confinement claim under either the Eighth or Fourteenth Amendment, a plaintiff must satisfy two elements: (1) that the plaintiff suffered a constitutional deprivation that was "objectively, sufficiently serious," and (2) that the defendant acted with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks omitted); *see also Jabbar*, 683 F.3d at 57 (Eighth Amendment); *Darnell*, 849 F.3d at 30–35 (Fourteenth Amendment).  "Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'"  *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).  "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'"  *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)); *see also Wright*, 554 F.3d at 268 ("The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'  In assessing this component, the court must ask whether 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" (citation omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992))); *see also Helling v. McKinney*, 509 U.S. 25, 36 (1993) ("In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.").  However, it is clear that "prisoners may not be deprived of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety'—and they may not be exposed 'to conditions that pose an

unreasonable risk of serious damage to their future health.'" *Jabbar*, 683 F.3d at 57 (alterations and italics omitted) (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam)).

"The second element . . . is applied somewhat differently to claims under the Eighth Amendment than the Fourteenth Amendment." *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 395 (S.D.N.Y. 2020) (quotation marks and alterations omitted). The Fourteenth Amendment "imposes an objective standard, whereas the Eighth Amendment imposes a subjective standard." *Id.*; *see also Falls v. Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *33 (S.D.N.Y. Mar. 26, 2021) ("The second element applies differently to claims under the Eighth Amendment and the Fourteenth Amendment" (quotation marks omitted)). Under the Eighth Amendment, the plaintiff must demonstrate that the defendant-prison official acted with "deliberate indifference," which requires "more than mere negligence." *Jabbar*, 683 F.3d at 57 (quoting *Farmer*, 511 U.S. at 385). Rather, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Id.*; *see also Pratt v. City of New York*, 929 F. Supp. 2d 314, 320 (S.D.N.Y. 2013) (explaining that "[a plaintiff] must show that the defendants knew of the health dangers and yet refused to remedy the situation, constituting deliberate indifference" (quotation marks omitted)). "[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Falls*, 2021 WL 1164185, at *33 ("Despite the slightly lower standard applicable to pretrial detainees, which is akin to objective recklessness, any § 1983 claim or

19

violation of due process requires proof of a mens rea greater than mere negligence." (quotation marks and alteration omitted)).

b.  Application

As to the first element, Defendants argue that there is no genuine dispute that "Aramark served Plaintiff a nutritionally adequate diet and that that diet did not present a danger to Plaintiff's health and well-being."  (Defs.' Mem. 11.)  The Constitution requires that prison officials provide inmates with "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well[-]being of the inmates who consume it.'"  *Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam)).  But "[b]ecause society does not expect or intend prison conditions to be comfortable, only *extreme* deprivations are sufficient to sustain a 'conditions-of-confinement' claim."  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (emphasis added).  Therefore, courts impose a high bar to success on a conditions of confinement claim based on a theory that the food provided in a prison or jail was inadequate. *See, e.g.*, *Hutto v. Finney*, 437 U.S. 678, 683, 684, 686–87 (1978) ("A filthy, overcrowded cell and a diet of 'grue'"—"a substance created by mashing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning into a paste and baking the mixture in a pan" and which caused inmates to lose weight—"might be tolerable for a few days and intolerably cruel for weeks or months"); *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 405 (S.D.N.Y. 2005) (granting summary judgment to the defendants "regarding the alleged denial of sanitary food," explaining that "[i]t is clear that food being served on a napkin or paper towel on one occasion did not present an immediate danger to the health and well[-]being of [the plaintiff]" (quotation marks omitted)); *Waring v. Meachum*, 175 F. Supp. 2d 230, 239 (D. Conn. 2001) ("The provision of cold food is not, by itself, a violation of the Eighth Amendment so long as it is nutritionally adequate and is

20

prepared and served under conditions which do not present an immediate danger to the health and well[-]being of the inmates who consume it."(quotation marks omitted)); *McNatt v. Unit Manager Parker*, No. 99-CV-1397, 2000 WL 307000, at *5 (D. Conn. Jan. 18, 2000) ("Although the denial of food has not been explicitly held to violate the Eighth Amendment prohibition, there are circumstances under which substantial deprivations of food may rise to constitutional dimension."); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required.").

Here, as the Court has already explained, *see supra* II.B.1., the only proper evidence in the record demonstrates that Plaintiff was served a diet at OCJ that "included adequate levels of protein, vitamin A, vitamin C[,] and calcium"; included only a "minimal" amount of soy; and "averaged 3,100 calories per day depending on the meals selected." (Johnson Aff. ¶¶ 12, 14.) At bottom, there is no genuine dispute that the food provided to Plaintiff at OCJ was "nutritionally acceptable" and "did not present a danger to [Plaintiff's] health and well-being." (*Id.* ¶¶ 15, 17.) A comparison to *Hill v. County of Montgomery* is instructive. No. 14-CV-933, 2019 WL 5842822 (N.D.N.Y. Nov. 7, 2019). In *Hill*, two former inmates of the Montgomery County Jail ("MCJ") brought a conditions of confinement claim based on allegations that the defendants "failed to provide adequate nutrition while they were in the [MCJ] . . . in violation of the Eighth and Fourteenth Amendments." *Id.* at *1. The defendants moved for summary judgment and the court denied the motion, explaining that the plaintiffs had created a genuine dispute of fact by "adduc[ing] evidence that three to four times per week, portions were halved[;]

21

[that] two to three times per week gravies and sauces were watered-down[;] that some of the food served regularly, including chicken and other meats, for example, was of such poor quality as to be inedible[;] that the vegetables lacked nutritional value[;] . . . that the kitchen at times failed to provide any substitution for planned menu items[;]" that there was a "14-hour time period between dinner and breakfast[;]" and that "the intensity of the hunger caused inmates, who had no access to food other than the meals MCJ provided, to consume non-food items, including cocoa butter and toothpaste, or large quantities of water to quiet their hunger." *Id.* at *13 (citations omitted); *cf. Reid v. Nassau Cnty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *15 (E.D.N.Y. Aug. 20, 2014) (explaining, on a motion to dismiss, that "[a]llegations that a prisoner was served food contaminated or 'tainted' by foreign objects, e.g., rocks, glass, human waste, soap, metal pins, staples, etc., are sufficient to plead a constitutional violation . . . as are allegations that prison officials deprived a prisoner of a nutritionally adequate diet for a prolonged period of time" (italics omitted)).  Plaintiff here has adduced no such evidence to create a genuine dispute that he suffered an objectively serious constitutional deprivation.[5]

---

[5] Plaintiff has adduced admissible evidence that he experienced frequent nausea and vomiting during his incarceration at OCJ in the form of his testimony, because he—of course—has firsthand knowledge of those experiences.  *See supra* I.A.  The record also reflects that he lost 12 pounds during his six-month incarceration.  *See id.*  However, as Defendants point out, (*see* Defs.' Mem. 12–13), Plaintiff has put forth no evidence "[o]ther than his own unsupported allegations" to "establish that he suffered [these] adverse physical effects *from* the meals he received," *Jones v. W. Tidewater Reg'l Jail*, 187 F. Supp. 3d 648, 657 (E.D. Va. 2016) (emphasis added), as opposed to his well-documented pre-existing medical conditions stemming from the car accident.  *See supra* I.A.  Because "the burden of proof at trial would fall on" Plaintiff to demonstrate that he suffered from an objectively serious constitutional deprivation, it is "sufficient for [Defendants] to point to a lack of evidence to go to the trier of fact on [this] essential element of [Plaintiff's] claim."  *CILP Assocs.*, 735 F.3d at 123; *see also McNatt*, 2000 WL 307000, at *6 (granting summary judgment on conditions of confinement claim where "although the plaintiffs allege that the serving portions are smaller, they do not demonstrate that the food received . . . was not nutritionally adequate for their needs," and "the plaintiffs fail to

As to the second element, there is simply no evidence in the record whatsoever that Defendants acted with deliberate indifference under either the Eighth Amendment or Fourteenth Amendment standard.  To the contrary, the record evidence demonstrates that Defendants, in fact, went to additional lengths to provide Plaintiff with adequate nutrition by providing him with Boost and Ensure drinks to attempt to supplement Plaintiff's diet once he began refusing his meals.  *See supra* I.A.  Such conduct does not evince the "disregard [of] an excessive risk to inmate health or safety," *Jabbar*, 683 F.3d at 57, or "reckless[] fail[ure] to act with reasonable care," *Darnell*, 849 F.3d at 35; rather, it demonstrates the opposite, *see, e.g.*, *Smith v. Fischer*, 500 F. App'x 59, 61–62 (2d Cir. 2012) (summary order) (affirming grant of summary judgment on conditions of confinement claim, explaining that the plaintiff "failed to show facts sufficient to demonstrate that [the defendants] acted with deliberate indifference" where "[i]t is undisputed that prison officials offered [the plaintiff] access to special diets and arranged for him to meet with a registered dietician"); *Mastroianni v. Reilly*, 602 F. Supp. 2d 425, 436 (E.D.N.Y. 2009) (granting summary judgment to the defendant where "the diet provided to the plaintiff did not pose an imminent danger to his health and the responsiveness of [prison] staff to the plaintiff's dietary needs raises no constitutional concerns with respect to his health needs"); *Abbas v. Senkowski*, No. 03-CV-476, 2005 WL 2179426, at *7–8 (N.D.N.Y. Sept. 9, 2005) (recommending grant of summary judgment, finding that the defendants "did not exhibit deliberate indifference towards [the plaintiff's] medical needs" where, inter alia, "[the plaintiff]

---

allege that they suffered any ill effects *from* the reduced portions" (emphasis added)); *Odom v. Sielaff*, No. 92-CV-571, 1995 WL 625786, at *4 (E.D.N.Y. Oct. 12, 1995) ("To sustain a claim that prison food violates the Eighth Amendment, a prisoner must establish that the food served was either nutritionally inadequate or prepared in a manner which presented an immediate danger to his health, or that his health suffered *as a result* of eating the food." (emphasis added)).

23

was approved for a special diet which was implemented"), *report and recommendation adopted*, 2006 WL 1977503 (N.D.N.Y. July 11, 2006).

Accordingly, the Court finds that Defendants are additionally entitled to summary judgment on the merits.

<u>III.  Conclusion</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

The Clerk of Court is directed to terminate the pending Motion, (*see* Dkt. No. 60), enter judgment for Defendants, mail a copy of this Opinion & Order to Plaintiff, and close this case.

SO ORDERED.

Dated:   June 22, 2022
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge